IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:09CR147 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| RAFAEL POSADAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's objection, Filing No. 37, to the report and recommendation ("R&R") of the magistrate judge, Filing No. 36, on the defendant's motions to dismiss, Filing Nos. 5, 23, 33, and on defendant's motion to suppress, Filing No. 43 and amended motion to suppress, Filing No. 46.

The defendant's motion to suppress and amended motion to suppress seek suppression of DNA evidence. The DNA evidence challenged in the suppression motions was also addressed in the motions to dismiss. The defendant seeks suppression of the DNA evidence that links him to an abandoned suitcase containing clothing and drugs.

**R&R - MOTIONS TO DISMISS**

The court agrees with the magistrate judge's recitation of the facts, and they need not be fully repeated here. *See* Filing No. 36, R&R at 1 to 5. Posadas moved to dismiss the Indictment based on prosecutorial misconduct before the grand jury. He challenged the prosecutor's statements that: Posadas was in immigration custody; evidence implicating Posadas had been thrown out in an earlier case; and Posadas had been indicted by another grand jury. Further, the defendant contended that the indictment was subject to dismissal for violations of the Speedy Trial Act, 18 U.S.C. § 3161. Posadas's

motions to dismiss were also based on the contention that improper evidence was presented to the grand jury.  That contention is based on this court's earlier ruling suppressing, as fruit of the poisonous tree,  DNA evidence garnered from a buccal swab of Posadas, which was a match to DNA found in the abandoned bag.   The grand jury was presented with evidence that the DNA evidence in the abandoned bag matched DNA attributed to Posadas in a California database.

The magistrate judge found that Posadas had no legitimate expectation of privacy in the abandoned bag.  He further found that the comparison of the evidence found in the abandoned bag to Posadas's DNA profile in a California database was not "fruit of the poisonous tree" because law enforcement officers had gained the knowledge leading to the database search during a consensual encounter that occurred prior to the illegal detention.   The magistrate judge found no merit to the defendant's allegations of prosecutorial misconduct.  With respect to the alleged Speedy Trial Act violations, the magistrate judge found that the present indictment, identical to the indictment in the earlier case,  is thus in the nature of a superseding indictment that does not reset the Speedy Trial clock.  Using the Speedy Trial calculation of the earlier case, the magistrate judge found that only 54 nonexcludable days had elapsed in both cases combined.

Defendant objects to the magistrate judge's findings.  Filing No. 37.  He contends that the magistrate judge erred in his analysis of the prosecutor's numerous transgressions in front of the grand jury, and also contends that the grand jury testimony of Nebraska State Patrol Investigator Alan Eberle shows that the magistrate judge erred in concluding that the search of the California DNA database was not fruit of the poisonous tree.  See Filing No. 42, Index of Evidence, Part 2, testimony of Alan Eberle.

Under 28 U.S.C. § 636(b)(1)(C), the court has conducted a *de novo* review of the record, including the transcript of the hearing, and has taken judicial notice of proceedings in the earlier case. *See United States v. Posadas*, Case No. 8:08CR238. The court agrees with the magistrate judge's determination that Posadas has no protected Fourth Amendment rights with respect to the abandoned bag. When asked, he disclaimed ownership of the bag. To claim Fourth Amendment protection, a defendant must show a reasonable and sufficient expectation of privacy in the place to be searched. *Minnesota v. Carter*, 525 U.S. 83, 87 (1998) (rejecting standing doctrine rubric in Fourth Amendment context); *United States v. Corona-Chavez*, 328 F.3d 974, 980 (8th Cir. 2003).

Further, the court finds that, assuming the government's statements to the grand jury were improper, the indictment is not subject to dismissal because the defendant cannot show he was prejudiced by the statements. A district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (8th Cir. 1988) (involving prosecutorial misconduct). "Dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (*quoting United States v. Mechanik*, 475 U.S. 66, 78 (1986)); *see also United States v. Williams*, 504 U.S. 36, 45 (1992) (holding that a prosecutor has no obligation to present exculpatory evidence to a grand jury).

Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. *United States*

*v. Calandra*, 414 U.S. 338, 349 (1974).   The grand jury may be provided evidence that ultimately is inadmissible without invalidating the indictment. *Id*. at 345 (stating that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."). *Id.* at 345.  Because the function of the grand jury is not to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, an indictment is not invalidated by the grand jury's consideration of hearsay, or by the introduction of evidence obtained in violation of the Fourth Amendment. *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Calandra*, 414 U.S. 338, 350-51(1974).

The court does not condone the prosecutor's statements to the grand jury. Informing the grand jury that Posadas was in the custody of Immigration and Customs Enforcement was irrelevant, potentially prejudicial and inflammatory, and amounted to gratuitous overkill.  The government's argument that it needed to present the evidence to explain the case to the grand jury is superficially plausible, but unconvincing. Nevertheless, the court cannot find that the allegedly inappropriate commentary would so influence the grand jury as to affect its decision to indict.  DNA evidence is strong and compelling.  The DNA evidence linked Posadas to the illicit drugs found in the suitcase. With the DNA evidence, the government had enough evidence for a new indictment.  The court finds the grand jury would have indicted without regard to the statements.  The presentation of information about the defendant's immigration status and the history of the case, while arguably improper, would not have been enough to sway the jury and influence the outcome.  The DNA evidence presented to the grand jury could support the Indictment on its own.

The court also adopts the magistrate judge's finding that the 70-day limitation under the Speedy Trial Act runs from the time of the original indictment in 8:08CR238. At the time the magistrate judge filed his report and recommendation, 54 nonexcludable days had elapsed on the Speedy Trial clock. Neither party challenges the magistrate judge's calculations. The time between the filing of the R&R on July 14, 2009, and the hearing on the defendant's objections to the R&R and his motions to suppress on September 2, 2009, is excludable under 18 U.S.C. § 3161(h)(1)(D), and the time between September 2, 2009, and the date of this order is excludable under 18 U.S.C. § 3161(h)(1)(H).[1] This matter will be set for trial within the time remaining on the speedy trial clock, so there is no Speedy Trial Act violation. The court finds the magistrate judge's report and recommendation is not clearly erroneous or contrary to law, and the court finds the recommendation should be adopted.

## MOTION TO SUPPRESS

Posadas seeks suppression of the evidence found in the abandoned bag and of the DNA match found in the California database. He contends that the bag cannot be considered to have been abandoned because law enforcement officers did not ask whether the occupants of other train cars claimed ownership of the bag. The evidence shows, however, that Posadas had an opportunity to claim ownership of the bag and he

---

[1]Section 3161(h) provides that periods of delay resulting from proceedings concerning the defendant, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" are excluded in computing the time within which the trial must commence. 18 U.S.C. § 3161(h)(1)(D). The defendant filed an objection to the R&R on July 14, 2009; a motion to extend the time in which to file pretrial motions on July 15, 2009; and a motion to suppress and an amended motion to suppress on July 20, 2009. The court granted the motion to extend on July 20, 2009. On August 31, 2009, the court set a hearing on the motions. The hearing was held on September 2, 2009, and the motions were considered submitted. The Speedy Trial Act provides for exclusion of "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H).

disclaimed it.  Whether the bag had been presented to occupants of other train cars is irrelevant because it is not disputed that Posadas himself denied ownership of the bag. Posadas denied ownership of the bag before he was illegally seized.  *See, e.g., United States v. Gwinn*, 191 F.3d 874, 877 (8th Cir. 1999) (noting that abandonment of a bag was a voluntary decision when the defendant had not been informed that he was a target or seized prior to his denial of ownership of a bag).  The court finds that the bag was abandoned and again finds that Posadas has no protected Fourth Amendment rights with respect to the abandoned bag.  *See United States v. Corona-Chavez,* 328 F.3d at 980. Accordingly, the defendant's motion to suppress the evidence found in the abandoned bag will be denied.

Posadas also contends the evidence derived from the search of the California database must be suppressed as fruit of the poisonous tree.  "In the usual context of a criminal trial, the defendant is entitled to the suppression of, not only the evidence obtained through an unlawful search and seizure, but also any derivative use of that evidence." *Calandra,* 414 U.S. at 355.  However, "the exclusionary rule is inapplicable when the connection between the constitutional violation and the evidence to be excluded is 'so attenuated as to dissipate the taint.'" *United States v. Swope,* 542 F.3d 609, 613 (8th Cir. 2008) (*quoting Nardone v. United States*, 308 U.S. 338, 341 (1939).  The "independent source" doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation.  *Nix v. Williams,* 467 U.S. 431, 443 (1984).  The foundational goal of the independent source doctrine is to put the police "'in the same, not a worse, position that they would have been in if no police error or misconduct had occurred.'" *Swope,* 542 F.3d at 614 (*quoting Nix v. Williams*, 467 U.S. 431, 443 (1984)).

6

Under Eighth Circuit precedent, the proper test under the first prong is whether the police would have taken the same action absent illegally obtained information. *See, e.g., Swope, 542 F.3d at 615; United States v. Khabeer, 410 F.3d 477, 483 (8th Cir. 2005)* (holding that in order to establish that the independent source doctrine applies to evidence seized pursuant to a warrant obtained after an unlawful entry to a home, the government must show that the decision to seek the warrant was independent of the unlawful entry—i.e., that police would have sought the warrant even if the initial entry had not occurred). A guiding principle of the doctrine "is whether suppression would place the police in a worse position than they would be in had they not acquired the illegal information in the first instance." *Swope, 542 F.3d at 615*.

Under the related "inevitable discovery" exception to the exclusionary rule, "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." *Nix v. Williams, 467 U.S. at 447 (1984)*. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice. *Id.* (noting that suppression of the evidence would operate to undermine the adversary system by putting the State in a worse position than it would have occupied without any police misconduct). The test for inevitable discovery has two elements: first, there must be an ongoing line of investigation that is distinct from the impermissible or unlawful technique; and second, there must be a showing of a reasonable probability that the permissible line of investigation would have led to the independent discovery of the evidence. *United States v. Villalba-Alvarado, 345 F.3d 1007, 1019 (8th Cir. 2003)*. The required standard

of proof on this evidentiary issue is a simple preponderance of the evidence, not proof beyond a reasonable doubt. *Id.* at 1020. In making this inquiry, "it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred." *Id.* This inquiry necessarily entails reasoning about hypothetical circumstances contrary to fact. *Id.* (noting that "it is important to note that we do not discount the availability of the drug dog simply because the officers did not actually call the drug dog or discount the searching ability of the officers simply because they were not forced to display that ability.").

As applied to this case, the government has shown that the evidence establishing the DNA database match to the DNA found in the abandoned suitcase was acquired from a source independent of the taint. This court first suppressed the evidence that initially connected the defendant to the drugs in the abandoned suitcase, that is, the keys to the abandoned suitcase that were found in a search of the defendant's carry-on luggage, because the defendant had been illegally seized. *See United States v. Posadas*, No. 8:08CR238, Filing No. 34, Memorandum and Order at 3. Later, the court suppressed evidence obtained pursuant to a search warrant that authorized a buccal swab for the defendant's DNA, finding that the search warrant was obtained by exploitation of the illegal detention. *Id.*, Filing No. 64, Memorandum and Order at 2-3. In making that finding, the court found that the government had not established that it could have obtained Posadas's DNA in reliance on evidence independent of the illegality or that the evidence would have been discovered inevitably. *Id.* at 4.

In contrast, the DNA-match evidence from the California database is attenuated enough from the illegal detention so as to purge the initial taint of the illegal detention. Once the buccal-swab DNA evidence was suppressed, the government remained in possession of clothing that contained DNA that had been found in the abandoned suitcase along with drugs.  The government needed to connect that DNA to Posadas with proof from a source other than the buccal swab.  Given the awareness by law enforcement officers that DNA databases are widely used in criminal investigations, it would have been a logical next step to attempt to match the DNA found in the abandoned bag with the drugs to a DNA database.  The fact that Investigator Eberle testified that he received information from ICE Agent Becker that led him to narrow the search to the California DNA database is of no consequence because the DNA match would have been discovered inevitably in a nationwide DNA search.  Christine Moraczewski, the CODIS[2] state administrator for the State of Nebraska, testified that the DNA results from state labs are submitted or uploaded to national DNA index system ("NDIS") every week.  Filing No. 35, Transcript at 12.  She also testified that the profile of Posadas's DNA from California had been uploaded to the national database and that she would have found a match there once she uploaded the evidence DNA to the national database.  *Id.* at 21-22.  Although Officer Eberle told Moraczewski the defendant's name, she testified that she did not run the search using the name, but used a unique identifying number.  *Id.* at 19, 23.  Additionally, it is of no consequence that the officers may have acquired knowledge of some aspects of the

---

[2]CODIS stands for the Combined DNA Index System.  It is the software that is used to run the database.  Filing No. 35, Transcript at 10.

defendant's criminal history from the pretrial services report, since that information is widely available to law enforcement officers from other sources.

The evidence shows that law enforcement officers knew of Posadas's prior record from a criminal records check prior to the illegal seizure. The officers also knew his name, that he was from California, that large quantity of drugs had been found in a bag, that Posadas, among others, had denied ownership of the bag, and that Posadas had acted somewhat suspiciously. Though these facts may not have amounted to probable cause enough to seize the defendant or to search his bag, it surely amounted to suspicion enough to prompt further investigation. It was reasonably probable that the further investigation would have included a DNA test of the clothing found in the bag with the drugs.[3] Whether or not Posadas remained in custody, there is a reasonable probability that the DNA evidence obtained from the abandoned bag would have been run against a DNA database and would have resulted in a match to Rafael Posadas. Accordingly,

IT IS ORDERED:

1. Defendant's objection (Filing No. 37) to the R&R of the magistrate judge (Filing No. 36) is overruled.

2. The R&R of the magistrate judge (Filing No. 36) is adopted.

3. Defendant's motions to dismiss (Filing Nos. 5, 23, 33) are denied.

---

[3]The fact that Posadas remained in the custody of immigration officials while these proceedings have been pending is of no consequence to this discussion. This court lacked jurisdiction to review the ICE detainer. Moreover, any potential advantage to the government or detriment to the defendant as a result of the dismissal and refiling of the action have been remedied by the court's adoption of the magistrate judge's finding that the 70-day limitation under the Speedy Trial Act runs from the time of the original indictment in 8:08CR238. Also, the time defendant has spent in custody will be credited to any sentence he receives if he is convicted.

4.  The Clerk of Court is directed to compute the defendant's Speedy Trial Act time to run from the date of the original indictment in 8:08CR238.  *See* Filing No. 36, R&R at 6-7.

5.  Defendant's motion to suppress (Filing No. 43) and amended motion to suppress (Filing No. 46) are denied.

6.  This matter is set for trial before the undersigned on **October 5, 2009, at 8:30 a.m.,** Courtroom No. 3, Roman L. Hruska U.S. Courthouse, 111 South 18th Plaza, Omaha, Nebraska.

DATED this 17th day of September, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.